*148 DECISION
AMANDA L. ROCKMAN, Associate Judge.*
INTRODUCTION
The Court must determine whether to uphold the findings and recommendations *149 of the Ho-Chunk Nation Committee on Tribal Enrollment (hereinafter Tribal Enrollment Committee or Committee). The Court declines to affirm the findings and recommendations of the Tribal Enrollment Committee. The analysis of the Court follows below.
PROCEDURAL HISTORY
The petitioner, Daria M. Powless, by and through Attorney JoAnn F. Jones, initiated the current action by filing a timely Petition for Administrative Review (hereinafter Petition) with the Court on February 8, 2010. See also Ho-Chunk Nation Rules of Civil Procedure (hereinafter HCN R. Civ. PX Rule 63(A)(3)(a).[1] On February 24, 2010, the respondent filed an Administrative Record, followed by a March 1, 2010 filing of Official Exhibits. See HCN R. Civ. P. 63(D). The Court convened a Status Hearing on Thursday, March 4, 2010 at 2:30 p.m. CDT, in order to address the scheduling.[2] On March 4, 2010, the Court entered the Scheduling Order, setting forth the timelines and procedures to which the parties should adhere during the pendency of the appeal.
On March 19, 2010, the respondent filed a Motion to Dispense with Briefing Schedule, constituting a stipulation to forego submission of briefs in regards to the underlying petition. Mot. to Dispense with Briefing Schedule (Mar. 19, 2010) at 1. The Court convened a Motion Hearing on Wednesday, April 7, 2010 at 10:00 a.m. CDT, in order to address the briefing. The Court entered its Amended Scheduling Order on April 28, 2010. The petitioner filed a timely Initial Brief on April 30, 2010. HCN R. Civ. P. 63(E). The respon *150 dent filed a Response Brief on May 27, 2010. Id. The petitioner did not timely file a Reply Brief Id. Neither party requested Oral Argument; specifically, the petitioner did not believe that Oral Arguments were necessary. Initial Br., at 1.
APPLICABLE LAW
CONSTITUTION OF THE HO-CHUNK NATION
Art. II—Membership
Sec. 1. Requirements
The following persons shall be eligible for membership in the Ho-Chunk Nation, provided, that such persons are not enrolled members of any other Indian nation:
(a) All persons of Ho-Chunk blood whose names appear or are entitled to appear on the official census roll prepared pursuant to the Act of January 18, 1881 (21 Stat. 315), or the Wisconsin Winnebago Annuity Payroll for the year one thousand nine hundred and one (1901), or the Act of January 20, 1910 (36 Stat. 873), or the Act of July 1,1912 (37 Stat. 187); or
(b) All descendants of persons listed in Section 1(a), provided, that such persons are at least one-fourth (1/4) Ho-Chunk blood.
(c) DNA must prove parentage. “DNA” means deoxyribonucleic acid [Amendment II adopted on May 6, 2009 which became effective June 20, 2009 by operation of law,]
(d) Beginning the date this amendment is approved, the Ho-Chunk Nation shall no longer consider or accept for enrollment any person who has previously been enrolled as a member of another Tribe (including the Winnebago Tribe of Nebraska). [New section adopted by Amendment I on January 26, 2000 and approved by the Secretary on March 3, 2000.]
See. 2. Relinquishment of Membership and Re-enrollment.
Enrollment in any other Indian Nation shall constitute voluntary relinquishment of membership. Adult members may relinquish their membership or the membership of their minor children. Relinquishment of membership shall be done in writing. Any adult member who has voluntarily requested to be removed from the Membership Roll shall not be eligible for re-enrollment. Any minor whose membership has been relinquished by a parent shall be eligible for re-enrollment upon reaching the age of eighteen (18).
Sec. 3. Re-enrollment by General Council.
Any person of at least one-fourth (1/4) Ho-Chunk blood who has relinquished membership under Section 2 of this Article may be re-enrolled into membership by a two-thirds (2/3) vote of the General Council, provided, that such individual is not an enrolled member of any other Indian Nation.
Sec. 4. Membership Roll
The Legislature shall maintain one official roll of all tribal members.
Sec. 5. Membership Code.
The Legislature shall have the power to enact laws not inconsistent with this Article to govern membership. Removal of any person who is not eligible for membership from the Membership Roll shall be done in accordance with the Membership Code, provided, that such removal is approved by at least two-thirds (2/3) vote of the General Council.
Sec. 6. Appeals
Any person who has been rejected for enrollment or who has been removed from the Membership Roll shall have the right to appeal to the Judiciary for a remedy in equity consistent with this Constitution.
*151 Art. IV—General Council
Sec. 2. Delegation, of Authority. The General Council hereby authorizes the legislative branch to make laws and appropriate funds in accordance with Article V. The General Council hereby authorizes the executive branch to enforce the laws and administer funds in accordance with Article VI. The General Council hereby authorizes the judicial branch to interpret and apply the laws and Constitution of the Nation in accordance with Article VII.
Art. V—Legislature
Sec. 2. Powers of the Legislature. The Legislature shall have the power:
(a) To make laws, including codes, ordinances, resolutions, and statutes;
Sec. 3. Codes. The Legislature shall adopt Codes governing Membership, Open Meetings, Elections, Ethics including conflicts of interest, nepotism, and the conduct of all elected and appointed officials and employees, and other Codes as deemed necessary.
Art. VII—Judiciary
Sec. 5. Jurisdiction of the Judiciary
(a) The Trial Court shall have original jurisdiction over all cases and controversies, both criminal and civil, in law or in equity, arising under the Constitution, laws, customs, and traditions of the Ho-Chunk Nation, including cases in which the Ho-Chunk Nation, or its officials and employees, shall be a party.
Sec. 6. Powers of the Trial Court.
(a) The Trial Court shall have the power to make findings of fact and conclusions of law. The Trial Court shall have the power to issue all remedies in law and in equity including injunctive and declaratory relief and all writs including attachment and mandamus.
TRIBAL ENROLLMENT AND MEMBERSHIP CODE, 6 HCC § 7
з. Definitions. For purposes of this Code, these words have the following definitions and will be identified throughout this document by capitalization:
i. “Clear and Convincing Evidence” means evidence that tends to show, on its face, more likely than not, that fact which is trying to be proven.
r. “DNA” is the acronym for deoxyri-bonucleic acid, which is that nucleic acid that carries the genetic information in the cell and is capable of self-replication and synthesis of ribonucleic acid “RNA
и. “Ho-Chunk Blood” means the quantum of Ho-Chunk Blood in a person’s lineage as it appears in Article II, Section 1 of the Constitution and includes Members of the Winnebago Tribe of Nebraska. If the Base Rolls provide no percentage of Ho-Chunk Blood, the Tribal Enrollment Officer will determine that the percentage of Ho-Chunk Blood is four-fourths (4/4), unless the Tribal Enrollment Officer determines by Clear and Convincing Evidence that the actual percentage is less than four-fourths (4/4).
5. Committee on Tribal Enrollment.
a. Committee Membership.
(1) Within the Department of Heritage Preservation, there will be a Committee on Tribal Enrollment that will serve the Office of Tribal Enrollment in an advisory capacity and hear appeals in accordance with this Code.
8. Appeals to Committee on Tribal Enrollment and Trial Court.
a. Except for as provided in paragraph 10. b. (2)(b)(v)(cc) 1, any Member, Applicant, or Sponsor may appeal a determination made by the Office of Tribal Enrollment to the Committee on Tribal *152 Enrollment Matters which may be appealed include determinations regarding Eligibility for Membership, a fine imposed by the Committee, or a Blood Quantum change that adversely affects the Member. Such appeal must be filed within sixty (60) Days after the date on which the Office of Tribal Enrollment publishes Notice of Eligibility for Membership or notifies the Member, Applicant, or Sponsor of the decision by certified mail. The Committee will hold a hearing and issue a decision on such appeal in accordance with this Code.
b. The Committee on Tribal Enrollment’s decision will be appealable to the Trial Court pursuant to Article II, Section 6 of the Constitution.
10. Ineligible Tribal Member Removal Procedures.
a. Grounds for Removal.
(1) The Member is less than one-fourth (1/4) Ho-Chunk Blood (Article II, Section 1(b) of the Constitution);
(2) insufficient proof of Ho-Chunk ancestry (Article II, Section 1(a) of the Constitution);
b. Persons Authorized to Initiate Possible Removal.
(1)Initiation of Removal by Tribal Enrollment Officer. The Tribal Enrollment Officer will initiate a removal of a Member from the Membership Roll upon determining that, by Clear and Convincing Evidence, the Member fails to meet the eligibility requirements.
e. Commencement of Removal.
(3) Notice of Hearing. The Office of Tribal Enrollment will provide the notice of hearing to the Affected Member at least thirty (30) Days prior to the date set for the hearing. The notice will include the date, time and location of the hearing and state that the Affected Member has the right to be represented by counsel. The notice will be sent by certified mail return receipt requested.
f. Hearing.
(2) Discovery. Not less than fifteen (15) Days prior to a hearing, each party will share with the other(s) all documentary evidence which the party intends to present at the hearing.
(3) Postponement of Hearings. Once scheduled, hearings will not be postponed for more than thirty (30) Days.
(4) Chairperson to Preside. The Chairperson of the Committee will preside over the hearing and will be responsible for controlling the presentation and admissibility of evidence, appearance of ■witnesses, and the overall order of the hearing.
(6) Closed Hearing. Due to confidential and private matters hearings will be closed to the public. Only Members of the Committee, the Tribal Enrollment Officer and his or her designated administrative/technical staff, the Affiants, the Affected Member, and the counsel of each party, the court reporter, and video photographer may be present at all times. Witnesses will be present only when giving testimony and shall be instructed to not discuss their testimony with any other individual during the hearing.
(7) Record. The record will include the Affidavits, all documentary evidence presented at the hearing and any stipulation or admission entered into at the hearing and all testimony taken during the hearing. The hearing will be recorded by transcript and video-taped. The transcript and tape will be kept on file by the Office of Tribal Enrollment for not less than one (1) year after the *153 hearing. Transcripts and tapes will not be released to any person, including the Affected Member, other than as required by the discovery rules applicable to any appeal to the Nation’s Trial Court.
(10) Evidence.
(a) Formal rules of evidence do not apply at the hearing but evidence which is irrelevant, cumulative or which would be unfair or prejudicial may be excluded by the Chair or admitted by the Chair under special conditions or stipulations. Basic rules of relevancy, materiality and probative force will be used by the Chair as a guide to admissibility. The Chair will rule on the admissibility of evidence.
(b) Documentary evidence may be received in the form of copies or excerpts if the original is not readily available. Upon request, opportunity will be granted to compare the copy to the original. At the discretion of the Committee, a reasonable amount of time will be provided to review the evidence.
(c) Greater weight will be given to the following documents: verification of enrollment in another Indian Tribe, certified birth certificate, social security card, Court Orders, and DNA analysis.
g. Findings and Recommendations.
(3) Timeline for Findings and Recommendations. The Committee will issue written findings and recommendations to the parties within ten (10) Days of the hearing.
(4) Committee Findings and Recommendations. The Committee on Tribal Enrollment may render any of the following findings and recommendations:
(a) Find that the removal by the Affiants is Frivolous and/or Malicious, and dismiss the removal.
(b) Find that the Affiants or Tribal Enrollment Officer failed to meet the evidentiary standard necessary to remove a Member and dismiss the removal.
(c) Find that an Affected Member, through admission, does not meet the Membership requirements and proceed with the removal.
(d) Find that the Affected Member is ineligible for Membership if documentary and/or testimonial evidence shows by Clear and Convincing Evidence that the Affected Member does not meet the qualifications for Membership outlined in Article II, Section 1 of the Ho-Chunk Constitution.
(e) If the Committee finds the Affected Member is ineligible for Tribal Membership, it may further recommend the forfeiture of any or all property or the repayment of money received from the Nation, pursuant to the laws of the
Nation. This may only happen upon a determination by the Committee that the evidence establishes beyond a reasonable doubt that the Affected Member became a Member through fraud.
(f)Order that the Affected Member, and their relatives needed to establish Ho-Chunk lineage, submit to a DNA analysis to be conducted by an independent testing laboratory contracted by and paid by the Ho-Chunk Nation. The Affected Member must contact the Office of Tribal Enrollment in order to set testing times and locations for him or her and the selected relative(s).
12. Appeals to Trial Court,.
a. An appeal of the findings and recommendations of the Committee on Tribal *154 Enrollment must be filed in the Trial Court within thirty (BO) Days of the date of the findings and recommendations.
b. Scope of Judicial Review. Decisions of the Trial Court will be based upon a review of the record of the Committee on Tribal Enrollment’s proceedings, oral arguments, if any, and any written statements submitted. The Trial Court will not exercise de novo review of the Committee’s findings and recommendations and will give proper deference to the expertise of the Committee and to its determinations of credibility. The Trial Court will not substitute its discretion for discretion legally vested in the Committee. The Trial Court will strictly construe the provisions of this Code.
c. The Trial Court will determine whether the findings and recommendations of the Committee:
(1) contains irregularities of procedure;
(2) is arbitrary, capricious or unreasonable;
(3) is unsupported by Clear and Convincing Evidence upon the whole record; or HO-CHUNK NATION RULES OF CIVIL PROCEDURE
Rule 5. Notice of Service of Process.
(A) Definitions.
2. Summons—The official notice to the party informing him/her that he/she is identified as a party to an action or is being sued, that an Answer is due in twenty (20) calendar days {See HCN ft Civ. P. 6) and that a Default Judgment may be entered against them if they do not file an Answer in the prescribed time. It shall also include the name and location of the Court, the case number, and the names of the parties. The Summons shall be issued by the Clerk of Court and shall be served with a copy of the filed Complaint attached.
(C) Methods of Service of Process
1. Personal Service. The required papers are delivered to the party in person by the bailiff, or when authorized by the Court, a law enforcement officer from any jurisdiction, or any other person not a party to the action who is eighteen (18) years of age or older and of suitable discretion.
Rule 61. Appeals.
Any final Judgment or Order of the Trial Court may be appealed to the Supreme Court. The Appeal must comply with the Ho-Chunk Nation Rules of Appellate Procedure, specifically Rules of Appellate Procedure, Rule 7, Right of Appeal. All subsequent actions of a final Judgment or Trial Court Order must follow the HCN Rules of Appellate Procedure.
Rule 63. Judicial Review of Administrative Adjudication.
(A) Any person aggrieved by a final agency decision may request that the Ho-Chunk Nation Trial Court review such decision by filing a Petition for Administrative Review with the Court within thirty (30) calendar days of such decision, unless otherwise provided.
(E) Within thirty (30) calendar days of filing the Petition for Administrative Review, the petitioner shall file a written brief, an Initial Brief unless the petitioner has sought an evidentiary modification pursuant to HCN R. Civ. P. 63(D)(l)(a-b). The respondent shall have thirty (30) calendar days after filing of the brief within which to file a Response Brief. After filing of respondent’s Response Brief, the petitioner may file the Reply Brief within ten (10) calendar days.
Rule 70. Judgments in Traditional Court Resolution Proceeding.
Selection of the Traditional Court by a litigant forecloses the use of the Trial *155 Court. All decisions of the Traditional Court will be summarized in writing by the Trial Judge. The decisions of the Traditional Court will not be appealable. The party selecting resolution by the Traditional Court must do so in writing and sign an acknowledgment that they understand that they will not be able to appeal the judgment to the Trial Court or Supreme Court. All parties appearing before the Traditional Court must appear voluntarily and consent in writing to the jurisdiction of the Traditional Court. The decisions of the Traditional Court apply only to the parties involved in that dispute, and will not be given any legal authority beyond that provided by the Constitution of the Ho-Chunk Nation.
FEDERAL RULES OF EVIDENCE
Rule 801. Definitions.
The following definitions apply under this article:
(a) Statement.
A “statement” is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion.
(b) Declarant.
A “declarant” is a person who makes a statement.
(c) Hearsay.
“Hearsay” is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Rule 802. Hearsay Rule.
Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress.
Rule 80S. Hearsay Exceptions; Availability of Declarant Immaterial.
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term “business” as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
Rule 901. Requimnent of Authentication or Identification.
(a) General provision.
The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
(b) Illustrations.
By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
*156 (1) Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be.
FINDINGS OF FACT
1. The parties received proper notice of the Amended Scheduling Order dated April 26, 2010.
2. The petitioner, Daria Powless, is currently a member of the Ho-Chunk Nation, Tribal ID #4394004799, and resides at W2425 Raedel Lane, Wisconsin Dells, W I 53965-0368.
3. The respondent, Tribal Enrollment Committee, is a division within the Ho-Chunk Nation Department of Heritage Preservation located on trust lands at Ho-Chunk Nation Headquarters, W9814 Airport Road, P.O. Box 667, Black River Falls WI. See Dep’t of Heritage Pres. Establishment & Org. Act of 2001, § 6.5c.
4. The Committee accepted a voluntary DNA analysis of the petitioner, Daria M. Powless, and the purported source of her blood quantum, Eldon Powless, which revealed that there was a 0.000% chance that the alleged source of the petitioner’s blood quantum was related to the petitioner. Official Ex. at 8-9.
DECISION
The Constitution of the Ho-Chunk Nation (hereinafter Constitution) vests legislative powers in the HCN Legislature (hereinafter Legislature) as delegated by the General Council. Const., Art. IV, § 2. The Legislature has the power to make laws, including codes, ordinances, resolutions, and statutes. Id., Art. V, § 2(a), § 3. In this instance, the Constitution contains provisions that the Legislature enact a membership code, and the Legislature subsequently enacted the Tribal Enrollment and Membership Code. Id., Art. II, § 5. The Constitution indicates that “[a]ny person who has been rejected for enrollment or who has been removed from the Membership Roll shall have the right to appeal to the Judiciary for a remedy in equity consistent with this Constitution.” Id., Art. II, § 6 (emphasis added).[3]
The Constitution delineates the Trial Court as having “the power to issue all remedies in law and in equity including injunctive and declaratory relief and all writs including attachment and manda *157 mus.” Id., ART.VII, § 6(a). An equitable remedy is one administered according to fairness as opposed to strictly formulated rules. Ronald, Kent Kirkwood v. Francis Decorah et al., CV 04-33 (HCN Tr. Ct., Feb. 11, 2005) at 15. Equitable remedies are typically prospective in nature and involve the court coercing a party to perform or refrain from performing an action. Id.; Hope B. Smith v. Ho-Chunk Nation, SU 03-80 (HCN S.Ct., Dec. 8, 2003) at 11. The Tribal Enrollment And Membership Code allows the Court only two (2) options for review, to either sustain or remand. See supra note 3. The Tribal Enrollment and Membership Code encroaches upon the Court’s ability to perform an appeal and grant appropriate or expansive relief.[4] Id.
The Tribal Enrollment and Membership Code creates a committee to conduct administrative adjudication by way of appeals.[5] Tribal Enrollment and Membership Code, 2 HCC § 7.8. However, by virtue of the legislation, the Committee appears to perform administrative adjudication. Whether it is through adjudicatory rulemaking, informal rulemaking or legislative rulemaking, this presupposes that the Legislature has the constitutional authority to make enrollment decisions. The Legislature does not have that authority and cannot delegate any power that it does not retain; therefore, any informal, formal or legislative rulemaking made by a division or a subdivision of an Executive Department would not require any judicial deference. The powers of the Legislature are enumerated within the Constitution, and the ability to determine membership is not one of the enumerated powers of the Legislature. Const., Art. V, § 2. Nonetheless, the Court recognizes the legislative authority to enact a law governing membership to provide a mechanism to effectuate the constitutional membership provision. Even so, the statutory limitation cannot supersede the constitutional grant of power to the Trial Court. The Trial Court has the authority to “issue all remedies in law and equity.” Const., Art. VI I, § 6(a); see also id, ART. II, § 6 (establishing a “right to appeal to the Judiciary for a remedy in equity”). Because of this constitutional mandate, it cannot be an error for the Trial Court to exercise its remedial power.
The Supreme Court has previously ruled that the Court may review agency constitutional interpretations de novo. Willard Lonetree v. Larry Garvin, SU 07-04 (HCN S.Ct., Oct. 8, 2007) at 4. Supreme Court decisions “are binding on the Trial Court.” Jacob Lonetree et al. v. Robert Funmaker, Jr. et al. SU 00-16 (HCN Tr. Ct., Mar. 16, 2001) at 4 (citing Const., Art. VII, § 7(c)). The Supreme Court earlier explained that “[sjtare decisis is the policy of courts to stand by prior established precedent.” See HCN Election Bd. v. Robert Mudd, SU 97-05 (HCN S.Ct., Oct. 28, 1997) at 2. The Trial Court must observe binding precedent of the Supreme Court. Likewise, the Supreme Court has favored a plain language approach and interpretation to the CONSTITUTION, statutes, and contracts. See, e.g., Chloris Lowe, Jr. et al. v. HCN Legislature Mem *158 bers et al., SU 00-17 (HCN S.Ct., Mar. 13, 2001) at 6; Marx Advertising Agency, Inc. v. HCN et al., SU 04-07 (HCN S.Ct., Apr. 4, 2004) at 11; Greg Littlejohn v. HCN Election Bd. et al., SU 03-07 (HCN S.Ct., July 11, 2003) (Butterfield, J. dissenting) at 5.
The plain language of the Constitution indicates “[t]he following persons shall be eligible for membership in the Ho-Chunk Nation ... [a]ll descendants of persons listed in Section 1(a), provided, that such persons are at least one-fourth (1/4) Ho-Chunk blood.” Const., Art. II, § 1(b). The Committee determined that Ms. Powless, through clear and convincing evidence provided through a DNA (deoxy-ribonucleic acid) test,[6] that she was not one-fourth (1/4) Ho-Chunk blood as constitutionally mandated; as a voluntary DNA analysis of the petitioner, Daria M. Pow-
less, and the purported source of her blood quantum, Eldon Powless, revealed that there was a 0.000% chanee that the alleged source of the petitioner’s blood quantum was related to the petitioner. Enrollment Committee Decision (Jan. 8, 2010) at 1; Official Ex. at 8-9.
Based upon the Committee’s determination, the petitioner filed a Petition for Administrative Review because the petitioner’s “attorney was not granted sufficient time to prepare for [the] case, time for discovery, [and the] request for rescheduling of [the] case was denied by [the Committee].” Pet. at 1. She further alleged that the “[pjerson initiating the removal [was] not present at [the] hearing.” Id. Furthermore, the “DNA [was] not authenticated by [an] expert.” Id. Also, the Committee failed to consider the Traditional Court ruling.[7] Finally, the petition *159 ers due process was denied.” Id. The petitioner consequently requested that the “matter be dismissed, [and she] remain enrolled as [Traditional [C]ourt decided on October 19, 2009[, and] that she receive her per capita. [Or the Court] remand for [a] new hearing with discovery and new DNA test certified [and] paid for by [the] Ho-Chunk Nation and Eldon Powless.” Id. at 3. The only relevant inquiry to the Court is whether Ms. Powless has the requisite (1/4) Ho-Chunk blood. Const., Art. II, § 1(b).
The Court recognizes that the Committee was not required to follow the formal rules of evidence in the removal hearing. Tribal Enrollment and Membership Code, 2 HCC § 7.10f(10)(a). As previously discussed, the Court cannot be improperly bound by the restrictive standards of review articulated within the Tribal Enrollment and Membership Code. The Court maintains several serious concerns regarding the admission of the DNA evidence in this case. As the DNA test was the primary piece of evidence presented by the Office of Tribal Enrollment and the primary evidence that the Committee relied upon for its Decision, the issues surrounding its admission are problematic. Enrollment Committee Decision (Jan. 8, 2010) at 1. The Court presently finds the DNA test inadmissible as offered for several reasons analyzed below.
The DNA test allowed into evidence by the Committee is hearsay as defined by the Federal Rules of Evidence (hereinafter Fed.R.Evid.) 801(c). It is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted. Id. A written assertion is considered a “statement.” Fed.R.Evid. 801(a). Thus, the DNA test’s assertion that Mr. Powless is not the petitioner’s father is a “statement.” A “declarant” is a person who makes a statement. Fed. R.Evid. 801(b). The “declarant” of the results of the DNA test is the Oklahoma State University Human Identity Laboratory (hereinafter OSU Laboratory). At the hearing, no one from the OSU laboratory testified. The DNA test results were offered to prove the truth of the matter asserted; specifically that Mr. Powless is not the father of the petitioner. Therefore, the DNA test results meet the definition of hearsay. Such hearsay is inadmissible. Fed.R.Evid. 802. The DNA test does not fall under the business records hearsay exception. Fed.R.Evid. 803(6) allows business records to be admitted “if witnesses testify that the records are integrated into a company’s records and relied upon in its day to day operations.” Matter of Ollag Constr. Equip. Corp., 665 F.2d 43, 46 (2d Cir.1981). Although OSU laboratory may engage in DNA analyses on a daily basis, those analyses are not akin to *160 the running of the day-to-day operations of the business. The necessary witnesses also did not testify at the removal hearing.
The Second Circuit has laid out a basic admissibility test for DNA evidence. It recognized that the general theories of genetics which support DNA testing are readily accepted within the scientific community. United States v. Jakobetz, 955 F.2d 786, 799 (2nd Cir.1992). Thus, a court can take judicial notice of the general acceptability of the general theory of DNA evidence and the use of common techniques. Id. However, in order to be admissible there must be a showing of reliability of the particular data being offered. Id. at 799-800. For example, a qualified witness should give some indication how the laboratory work was completed and what analysis was used in making the calculations. Id. at 800.
The Second Circuit’s requirements for DNA testing to be admissible represent a very basic threshold. Several Circuits have more stringent standards. However, even under the Second Circuit’s moderate standard, Mr. Hall’s presentation is not sufficient to authenticate the DNA evidence accepted by the Committee. Fed.R.Evid. 901(a) requires authentication as a condition precedent to admissibility. Authentication is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Fed.R.Evid. 901(a). Evidence can be authenticated by the testimony of a witness with knowledge. Fed.R,Evid. 901(b)(1). However, Mr. Hall does not have sufficient knowledge of how the laboratory work was done, analyzed, and delivered.
In order for the DNA test to be admitted into evidence, the Enrollment Office must provide testimony from a representative of OSU Laboratory to testify as to its authenticity. This must be someone with personal knowledge of the procedures and processes of OSU Laboratory’s DNA testing facility. As the test was completed over five (5) years ago, those in charge of administering the test may no longer be employed by OSU Laboratory. It possible that someone from OSU Laboratory is still qualified to testify as to how the laboratory work was completed, how the information was analyzed, and the chain of custody was established in regards to this particular DNA test.
BASED UPON THE FOREGOING, the respondent must schedule a hearing with the Court on or before December 2, 2010 for the purposes of presenting and authenticating the DNA test, in accordance with the FedeRal Rules of Evidence. The respondent may instead require the petitioner to submit to a new DNA test, conducted by an independent testing laboratory contracted by and paid by the Ho-Chunk Nation. The Court understands that due to the availability of the laboratory, the testing may not be able to be completed by this date. However, the respondent shall notify the Court on or before December 2, 2010, as to when the test will actually occur. The respondent shall also notify the Court within ten (10) days of receiving the new test results to schedule an evidentiary hearing.
The parties retain the right to file a timely post-judgment motion with this Court in accordance with HCN R. Civ. P. 58, Amendment to or Relief from Judgment or Order. Otherwise, “[t]he time for taking an appeal shall begin from the date the judgment is filed with the [Trial Court] Clerk [of Court].” HCN R. Civ. P. 57. Since this decision represents a non-final judgment, “[a]n appeal from [this] interlocutory order maybe [sic] sought by filing a petition for permission to appeal with the Supreme Court Clerk within ten (10) calendar days after the entry of such order with proof of service on all other parties to *161 an action.” Ho-Chunk Nation Rules of Appellate Procedure, Rule 8.[8]
IT IS SO ORDERED this 2nd day of September 2010, by the Ho-Chunk Nation trial Court located in Black River Falls, WI within the sovereign lands of the Ho-Chunk Nation.

 The Court appreciates the assistance of Staff Attorney Zachary Harold Atherton- Ely in the preparation and drafting of this opinion.

. The HCN R. Civ. P. indicate as follows: “laws provide for filing within one hundred eighty (180) days: Tribal Enrollment and Membership Act.” HCN R. Civ. P., R. 63(A)(3)(a). The Tribal Enrollment and Membership Code was subsequently enacted on October 16, 2007, and it supersedes Tribal Enrollment and Membership Act of 1995. The Tribal Enrollment and Membership Code currently provides a thirty (30) day timeframe for an individual to request a review of the “findings and recommendations” of the Committee. The HCN R. Civ. P. do not reflect such amendment.

. At the hearing, the Court noted that a discrepancy exists between the Tribal Enrollment and Membership Code and the HCN R. Civ. P. regarding deadlines. See supra n. 1. However, the Ho-Chunk Nation General Council delegated exclusive constitutional authority to the Ho-Chunk Nation Supreme Court “to establish written rules for the Judiciary." Const., Art. VII, § 7(b); see also HCN Judiciary Establishment & Org. Act, 1 HCC § 1.5c; Bonnie Smith v. HCN Gaming Comm'n, SU 01-02 (HCN S.Ct., May 11, 2001) at 2. Pursuant to this delegation, the Supreme Court adopted the Ho-Chunk Nation Rules of Civil Procedure on May 11, 1996, which "govern the procedure of the Trial Court in all actions and proceedings.” HCN R. Civ. P. 1. Of particular relevance here, HCN R. Civ. P. 63 deals with judicial review of administrative adjudication, and establishes court imposed deadlines and procedures for the Judiciary. Furthermore, the Supreme Court issued an administrative rule, which indicates that the judges must enter written decisions within three (3) months after the parties present a matter for either interim or final opinion. In the Matter of Timely Issuance of Decisions, Admin. Rule 04-09-05(1) (HCN S.Ct., Apr. 9, 2005). The Tribal Enrollment and Membership Code attempts to require the Court to issue a judgment within sixty (60) days of the filing. Based upon HCN R. Civ. P. 63, Judicial Review of Administrative Adjudication, the briefing schedule oftentimes extends beyond sixty (60) days of the filing. The Court attempted to expedite the matter. See Scheduling Order, CV 10—15 (HCN Tr. Ct., Mar. 4, 2010). However, due to an extension requested by the parties, the Court issued an Amended Scheduling Order, which resulted in the briefing schedule concluding on June 3, 2010. Therefore, the Court, relying upon the Supreme Court’s administrative rule, must enter a judgment on or prior to September 3, 2010. Admin. Rule 04-09-05(1).

. The Tribal Enrollment and Membership Code attempts to restrict the Court’s constitutionally granted authority to hear such appeals and grant remedies in equity. Specifically, the legislation states,
[i]n reviewing a finding and recommendation of the Committee, the Trial Court will have two (2) options. These two (2) options are to either sustain or remand the Committee’s findings and recommendations. The Court may not reverse a Committee’s findings and recommendations. The Trial Court will only remand the Committee’s findings and recommendations if the Court determines that the Committee's findings and recommendations contain irregularities of procedures or are arbitrary, capricious, or unreasonable, or unsupported by Clear and Convincing Evidence upon the whole record or involve an abuse of discretion. Upon remand, the Committee will reconsider its findings and determinations in light ol the Trial Court's opinion and judgment.
Tribal Enrollment and Membership Code. 2 HCC § 7.12. A court of equity has traditionally had the power to fashion any remedy deemed necessary and appropriate to do justice in the particular case. The legislation inhibits the Court’s ability to review an appeal and grant appropriate or expansive relief. See, e.g., Bride v. Baker, 37 App. D.C. 231, 236 (D.C.Cir.1911) ("Courts of equity are established to do justice in cases where an adequate remedy at law may not be had, and they should seek to do ultimate justice in all cases.’’). The Court cannot practically employ its equitable powers if improperly constrained to afford the utmost deferential treatment to the Committee’s decision.

. The predecessor legislation did not contain any similar provisions. Tribal Enrollment and Membership Act of 1995, HCNL 015-85, § 12.

. The Constitution authorizes the Judiciary to hear appeals. Const., Art. II, § 6. Nonetheless, the Legislature also created a mechanism under the Tribal Enrollment and Membership Code for the Tribal Enrollment Committee within the Department of Heritage Preservation to hear appeals. Tribal Enrollment and Membership Code, 2 HCC § 7.5a(l) (forming a committee “that will serve the Office of Tribal Enrollment in an advisory capacity and hear appeals in accordance with this Code”).

. The Legislature has deliberately selected this well-established burden of proof for accomplishing the purpose of the legislation. The Seventh Circuit Court of Appeals has offered the following observation in relation to this civil evidentiary standard:
The party with the burden of proof "must have been able to place in the ultimate fact-finder an abiding conviction that the truth of ... [his or her] factual contentions are "highly probable.’’ ' Colorado v. New Mexico, 467 U.S. 310, 317, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984). This is the Supreme Court’s definition of those words so often and so freely bandied about: clear and convincing evidence.’
Von Gonten v. Research Sys. Corp., 739 F.2d 1264, 1268 (7th Cir.1984); see also Joelene Smith v. Scott Beard et al., SU 00-14 (HCN S.Ct., Mar. 12, 2001) at 1 (acknowledging this standard definition). To prove something by “clear and convincing evidence,” the party with the burden of proof must convince the trier of fact that it is substantially more likely than not that the thing is in fact true. This is a lesser requirement than "proof beyond a reasonable doubt,” which requires that the trier of fact be close to certain of the truth of the matter asserted, but a stricter requirement than proof by “preponderance of the evidence,” which merely requires that the matter asserted seem more likely true than not. The Tribal Enrollment and Membership Code defines clear and convincing evidence as "evidence that tends to show, on its face, more likely than not, that fact which is trying to be proven.” Tribal Enrollment and Membership Code, 2 HCC § 7.3i. The legislatively provided definition appears to confusingly incorporate the “preponderance of the evidence” standard.

. In some instances, the Constitution and tradition and custom do not coincide. For instance, the Traditional Court has previously indicated that tradition and custom would only be applicable to an undisturbed paternal line. See Robert A. Mudd v. HCN Legislature, SU 03-02 (HCN S.Ct,, Apr. 8, 2003) at 4. In a juvenile case, the Traditional Court similarly articulated as follows: “unless a child possesses undisturbed paternal Hocak heritage, the Traditional Court may only concur with the placement of a child ... An adult or child with Hocak heritage derived maternally who voluntarily resides amongst the Hoc^k is welcome, but is not a member of a clan." In the Interest of Minor Child: S.L.S., DOB 01/03/1986, JV 00-19 (HCN Tr. Ct„ Mar. 29, 2001) at 5, n.l. Regardless, the Constitution requires that "persons are at least one-fourth *159 (1/4) Ho-Chunk blood." Const., Art. II, § 1(b). The Preamble of the Constitution bespeaks an incorporation of culture and traditions within the document, which is the supreme law of the land. Const., pmbl., ART. Ill, § 4. Ms. Annette Powless attended a Traditional Court meeting in October 2009; the Traditional Court indicated that Ms. Daria Powless should remain enrolled. Removal Hr'g of Daria M. Powless, Professional Reporting Services (Dec. 22, 2009) at 71; Official Ex. at 2. Although, the HCN R. Civ. P. 70 requires that ‘‘[a]ll parties appearing before the Traditional Court must appear voluntarily and consent in writing to the jurisdiction of the Traditional Court," only Ms. Powless appeared, and the parties did not mutually consent. HCN R. Civ. P. 70. Further, the Traditional Court indicated that the grandmother cared for the petitioner with no assistance, and that petitioner was destined to experience the Ho-Chunk way of life. Official Ex. at 2, The Court neither disputes that the grandmother cated for Ms. Powless, nor the perceived, preordained life of the petitioner.

. Parties can obtain a copy of the applicable rules by contacting the Ho-Chunk Nation Judiciary at (715) 284-2722 or (800) 434-4070 or visiting the judicial website at www.hu-chunknalion.com/government/judicial/con.s_ law.htm.